IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DAN AUAPAAU,<br><br>      Plaintiff,<br><br>  vs.<br><br>MARTIN O'MALLEY,<br>  Commissioner of Social Security,<br><br>      Defendant. | Civil No. 24-00176 MWJS-WRP<br><br>ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

## INTRODUCTION

Plaintiff Dan Auapaau appeals the denial of his application for Social Security disability insurance benefits.  He argues, among other things, that the Administrative Law Judge (ALJ) failed to articulate sufficient reasons for discrediting his testimony about the severity of his symptoms.  The Court agrees and therefore REVERSES the decision denying Auapaau's application and REMANDS for further administrative proceedings.

## BACKGROUND

Sometime in the mid-1990s, Auapaau fell on a rock and severely injured his head.  ECF No. 15-8, at PageID.435 (Administrative Record (AR) at 400).  By the 2000s, he began to suffer from seizures, *id.*, and eventually was diagnosed with a seizure disorder, ECF No. 15-3, at PageID.51 (AR at 21).  Auapaau stopped

performing full-time work in February 2020, and later that year, he applied for disability insurance benefits. *Id.* When that application was denied, he requested a hearing before an ALJ. *Id.* at PageID.48 (AR at 18). In September 2022, Auapaau and his spouse testified before the ALJ.

The Social Security regulations require ALJs to follow "a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also* 20 C.F.R. § 404.1520.

Following the September 2022 hearing, the ALJ concluded that Auapaau's application survived the first two steps of the sequential analysis: he was not presently working in substantially gainful activity, and his seizure disorder was severe. ECF No. 15-3, at PageID.51-52 (AR at 21-22). At step three, the ALJ found that Auapaau's impairment did not meet the severity of an impairment that would qualify him as disabled without regard to age, education, and work experience. *Id.* at PageID.52 (AR at 22); *see* 20 C.F.R. § 404.1520(a)(4)(iii), -(e).

2

For that reason, the ALJ next considered Auapaau's residual functional capacity ("RFC") to assess whether he could still perform his past relevant work or make an adjustment to other available work under steps four and five of the process.

In conducting the RFC analysis, the ALJ considered and ultimately rejected Auapaau's hearing testimony about the severity of his symptoms.  Auapaau had been a small business owner of a tents service for fifteen years before he filed his disability claim.  ECF No. 15-7, at PageID.227 (RA at 193).  For his business, Auapaau rented out large event tents (for example, for weddings or outdoor parties), drove those tents to the event sites, and provided setup and breakdown of the tents.  *Id.*  At the hearing, Auapaau testified that he had not been able to work that job for over two years (since February 2020) because of his doctor's instructions.  ECF No. 15-3, at PageID.69-70, 72 (AR at 39-40, 42).  When the ALJ asked why he was not able to work, Auapaau answered that it was because of the seizures he was having:  he "could have an attack while he's driving or something like that," and because he "also cannot lift heavy stuff."  *Id.* at PageID.70 (AR at 40).  Moreover, certain environmental factors, such as "too much light or . . . loud sounds" would "trigger[]" his seizures.  *Id.* at PageID.74 (AR at 44).

Auapaau testified that he and his wife estimated that as of April 2022, he would experience one seizure per month.  *Id.* at PageID.70, 73 (AR at 40, 43).  But

3

Auapaau did not always know when he had a seizure, and Auapaau's wife testified that because she worked for eight to sixteen hours a day, she was not always able to observe him when they happened. *Id.* at PageID.73, 79(AR at 43, 49). When Auapaau had a seizure, it would last for approximately a minute and take him fifteen minutes to recover. *Id.* at PageID.71 (AR at 41). And even after getting "back to normal," he would still "feel very weak and very sleepy so the only thing I want to do is just sleep." *Id.* at PageID.73 (AR at 43). Auapaau reported that when he slept after having a seizure, he did not know for how long he was asleep, but his children would usually tell him that he had been "sleeping three to four hours." *Id.* at PageID.74 (AR at 44).

Auapaau explained that his condition was "getting better" since he stopped working in February 2020,his doctor adjusted his prescription, and he seemed to have fewer seizures overall. *Id.* at PageID.72-73 (AR at 42-43). But taking that medicine limited his capabilities because he was required to take it "at 9:00 a.m. and 9:00 p.m.," and he felt "weak" after doing so and could not "do any work." *Id.* at PageID.74-75 (AR at 44-45).

The ALJ found that Auapaau's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." *Id.* at PageID.53 (AR at 23). But the ALJ nonetheless rejected Auapaau's testimony, finding that his "statements about the intensity, persistence, and limiting effects of his symptoms"

were "inconsistent with the overall record." *Id.* at PageID.53 (AR at 23).  The ALJ therefore concluded that Auapaau generally had the RFC to perform "medium work," *id.* at PageID.52 (AR at 22), which requires "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

      The ALJ provided two grounds to support his credibility finding.  First, the ALJ found that Auapaau's activities of daily living were inconsistent with his testimony about the severity of his symptoms.  Auapaau testified that he "had been instructed to cease working" and that "he could not perform heavy lifting and that there was a danger of a seizure occurring while driving."  *Id.* at PageID.53 (AR at 23).  But Auapaau also "reported that he has a driver's license and is able to drive," and "that he is able to answer phones and discuss pricing with potential customers to his tent rental business."  *Id.*  The ALJ further noted that Auapaau "was able to assist with moving furniture for pay, but he noted that machinery helped to limit heavy lifting," and that "[w]hen asked about the heaviest weight lifted, he stated that he lifted a couch."  *Id.*  Moreover, the ALJ pointed out that Auapaau's doctor cleared him to travel to Australia.  *Id.*  According to the ALJ, these activities contradicted Auapaau's testimony: "[c]ontrary to concerns over safety involving

5

heavy lifting or interruption of dangerous activities, the claimant has helped to lift a couch and drives on public roads." *Id.*

Second, the ALJ explained that Auapaau's testimony about the "intensity, persistence, and limiting effects of his symptoms" were "inconsistent with the overall record." *Id.* In particular, the ALJ found that "the record indicates that changes to medication or better compliance would improve the claimant's seizure activity." *Id.* Here, the ALJ pointed out that Auapaau had at one time been "experiencing a non-convulsive seizure that lasts for one minute approximately once every one to two weeks," but that in May 2020, a doctor "reported suspicions of medication noncompliance as the cause" of two then-recent "partial breakthrough seizures." *Id.* Then, in September 2020, another doctor reported that Auapaau would have "a non-convulsive seizure that lasts for one minute approximately once every one to two weeks." *Id.* And "after titrating medication, the claimant's seizure activity reduced to only once a month." *Id.* This evidence, in the ALJ's view, demonstrated that Auapaau "could perform medium work and does not require seizure precautions beyond" the above-described RFC. *Id.*[1]

Given his determination that Auapaau's RFC allowed him to perform medium work, the ALJ concluded—at steps four and five of the sequential

---

[1]  The ALJ also considered and rejected the testimony of Auapaau's spouse and medical evidence provided by Auapaau's doctor and credited instead the evidence provided by state agency consultants. *Id.* at PageID.53-55 (AR at 23-25).

6

analysis—that Auapaau could perform the requirements of his past work as a small business operator, as well as the requirements of representative occupations such as an auto detailer, kitchen helper, and hospital cleaner.  *Id.* at PageID.55-56 (AR at 25-26).  Auapaau therefore would not be considered disabled between February 12, 2020, and the date of the ALJ's decision.  *Id.*

Auapaau requested a review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the final decision of the Commissioner.  *Id.* at PageID.31-34 (AR at 1-4).  He then appealed to this Court, which has jurisdiction under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court must affirm an ALJ's disability determination unless "it is either not supported by substantial evidence or is based upon legal error."  *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).  And while "substantial" means "more than a mere scintilla," it requires "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up).

But while a court's review is deferential, it must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  As the Ninth Circuit has explained, "[l]ong-standing principles of

administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

## DISCUSSION

Many Social Security disability benefits cases hinge on the credibility of a claimant's testimony about the severity of their symptoms. To test the credibility of such testimony, ALJs sometimes compare it to the claimant's activities of daily living: does an applicant participate in activities that are inconsistent with the limitations they allege? That kind of analysis—which follows the maxim that actions speak louder than words—makes intuitive sense, and the law permits it.

But there is a danger in conducting an analysis of that sort, for "disability claimants should not be penalized for attempting to lead" their "lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). To safeguard against that danger, the Ninth Circuit has provided guidelines for using evidence of a claimant's activities of daily living to assess a claimant's symptom testimony: If a medical impairment has been established, and there is no evidence that the claimant is malingering—that is, exaggerating or feigning their illness— then "the ALJ must provide specific, cogent reasons" for disbelieving the claimant's symptom testimony, and those reasons "must be clear and convincing."

*Orn*, 495 F.3d at 635 (cleaned up).  Moreover, daily activities may be found to bear on the credibility of a claimant's testimony only if (1) the activities actually contradict the claimant's symptom testimony, or (2) they show that the claimant spends a substantial part of their day engaged in pursuits that are transferable to a work setting.  *Id.* at 639.  Absent one of these grounds, a claimant's daily activities cannot fairly be said to detract from a claimant's testimony about the effect of their disability.

In this case, Auapaau testified that his doctor had instructed him to cease working because "he could not perform heavy lifting" and "there was a danger of a seizure occurring while driving."  ECF No. 15, at PageID.53 (AR at 23).  Auapaau further testified that he would "feel very weak and very sleepy" after a seizure, *id.* at PageID.73 (AR at 43); that while he and his spouse estimated that he had a single seizure per month, he did not always know when he had a seizure, *id.*; that certain environmental circumstances, such as "too much light or . . . loud sounds" would "trigger[]" his seizures, *id.* at PageID.74 (AR at 44); and that his prescribed medication, which he was required to take at 9:00 a.m. and 9:00 p.m., left him "weak" and unable to "do any work," *id.* at PageID.74-75 (AR at 44-45).

The ALJ found no malingering and acknowledged that his seizure disorder *could* reasonably be expected to cause the alleged symptoms.  But the ALJ nonetheless concluded that Auapaau's symptom testimony was contradicted by the

9

facts that he (a) had a driver's license and was able to drive, (b) helped to operate his tent rental business, (c) had helped with a furniture moving business and once helped to lift a couch, and (d) had been cleared to travel to Australia.  Although these grounds could, with further elaboration, conceivably support the finding that Auapaau could perform medium work, the ALJ's decision did not supply the specific, cogent reasons needed to support that conclusion.

     Take Auapaau's driving.  The ALJ stated simply that Auapaau had a driver's license and could drive.  Neither of these grounds, standing alone, is sufficient to contradict Auapaau's testimony that there was a danger he could have a seizure while driving, particularly on the longer distances that would be necessary to work.  To be sure, Auapaau did testify at the hearing that he drove his children to school when his spouse was not able to do so because of work.  But he also testified that his children's school is a three-minute drive from his home.  ECF No. 15-3, at PageID.75 (AR at 45).  It is possible that the ALJ, on remand, could reason that a parent who truly believed they were a danger on the road would not drive with their children.  And on appeal, the Commissioner makes precisely that argument: "if Plaintiff were really as dangerous behind the wheel as he claimed, it would be reasonable to expect that he would avoid putting his own children in the car with

him for a three-minute drive (which could take as little as 20 minutes to walk)." ECF No. 19, at PageID.787 n.3.

But the ALJ did not articulate that reasoning in his written decision. And the Court cannot readily infer that the ALJ would have adopted that reasoning. As the record currently stands, there is no evidence suggesting that the route to school was walkable at all, or that Auapaau and his spouse had any better, safer option for transporting their children. *See* ECF No. 20, at PageID.799 n.1 ("The Commissioner's argument assumes that Dan's neighborhood was walkable, that his children did not have disabilities, and any other number of reasons why a short drive was a necessity."). In the end, the Commissioner offers only "*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225. Those rationalizations may be persuasive, but the Court cannot affirm on such grounds.

The ALJ's reliance on Auapaau's tent rental business suffers from similar flaws. On this topic, the ALJ merely stated that Auapaau "is able to answer phones and discuss pricing with potential customers." ECF No. 15-3, at PageID.53 (AR at 23). But the ALJ did not identify how Auapaau's ability to talk on a phone contradicted his other testimony about the severity of his symptoms. Nor did the ALJ suggest that Auapaau participated in this tent rental business with a sufficient frequency to support the conclusion that he was spending a *substantial* part of his

11

day engaged in pursuits that are transferable to a work setting.  *Orn*, 495 F.3d at 639.  And the record, at present, does not support either conclusion.  Auapaau's testimony at the hearing revealed—without contradiction—that his current tent rental business operations are quite minimal.  As Auapaau explained, he owns tents that are rented out for various events.  ECF No. 15-3, at PageID.68-69 (AR at 38-39).  At the time of the hearing, he did no lifting or transporting of tents himself, but instead paid nephews to do that work.  *Id.*  And when asked "[h]ow many hours a week on average" he spent "on this business," Auapaau answered that "[s]ometimes there's none at all and sometimes maybe three times a month I get a call."  *Id.* at PageID.69 (AR at 39).  It is not obvious how Auapaau's ability to answer a phone three times a month would contradict his testimony about the severity of his symptoms.  At a minimum, the ALJ offered no answer to that question, and the Court may not divine one on appeal.[2]

Similar problems infect the ALJ's reliance on Auapaau's testimony that he helped to move furniture for pay.  In theory, participating in that kind of work

---

[2]  Activities of daily living might contradict symptom testimony even if they amount only to "part-time work," *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020), or merely suggest "some difficulty functioning" but not a complete inability to function, *Molina v. Astrue*, 674 F.3d 1104, 11113 (9th Cir. 2012).  Even if a claimant does not spend a *substantial* part of their day engaged in an activity that is transferable to a work setting, that same activity still might undermine a claimant's symptom testimony if it *actually contradicts* that testimony.  But whatever the nature of the activity at issue, the ALJ must actually explain how it contradicts the symptom testimony.  The ALJ did not adequately do so here.

could contradict a claimant's testimony about the severity of their symptoms, but the ALJ here did not adequately explain why Auapaau's conduct does so here. To begin with, the ALJ nowhere acknowledged that Auapaau had not helped with the moving of furniture for more than a year prior to the hearing. ECF No. 15-3 at at PageID.72 (AR at 42). Nor did the ALJ acknowledge that Auapaau—by his uncontradicted testimony—had only helped move furniture sporadically, around two to four times a month, and did this work with the assistance of machinery. *Id.* And the ALJ did not explain how Auapaau's participation in an activity fewer than one time a week (and lifting a couch on a single occasion) would contradict his testimony that he could not perform similar tasks on a full-time basis.[3] In sum, the ALJ did not offer "specific, cogent reasons" for disbelieving Auapaau's symptom testimony based on his past sporadic work helping to move furniture with the assistance of machinery. *Orn*, 495 F.3d at 635 (cleaned up).

Finally, although the ALJ mentioned that Auapaau was cleared to travel to Australia, the ALJ did not adequately explain why that would contradict Auapaau's testimony about the severity of his symptoms. At the hearing, Auapaau

---

[3] The Commissioner argues, in passing, that Auapaau "never told the ALJ that he lifted a couch only once." ECF No. 19, at PageID.787 n.4. That may be true, but he also did not say that he repeatedly lifted couches, and the ALJ made no finding that Auapaau did so more than once. And while Auapaau testified that he helped move furniture, again, his testimony was that he did so with the aid of machinery—a point the ALJ did not dispute or question. ECF No. 15-3, at PageID.71.

explained that he had traveled to Australia, and then to Samoa for his father's funeral. ECF No. 15-3, at PageID.75 (AR at 45). But Auapaau did not travel alone—he went with his sister and spouse. *Id.* at PageID.76 (AR at 46). The ALJ did not explain why an assisted trip of this sort, done once, would suggest that Auapaau could perform medium work full-time.

\*   \*   \*

The Commissioner argues that the ALJ's decision should still be affirmed because the ALJ separately found that the medical evidence did not support Auapaau's testimony. ECF No. 19 at PageID.786 n.1, 789-93. But because the ALJ relied in part on his assessment of Auapaau's activities of daily living, and did not say that he would have reached the same conclusion based solely on his separate assessment of the medical evidence, it is not clear from the current record that the ALJ would necessarily have rejected Auapaau's testimony based on the medical evidence alone. That is a matter the ALJ must take up on remand.

Auapaau, for his part, argues that the Court should simply remand with instructions to award benefits, rather than remand for further proceedings. ECF No. 17, at PageID.781. The Court declines to do so. Although the Court has concluded that the ALJ's decision did not adequately justify its rejection of Auapaau's symptom testimony, it is conceivable that the ALJ might be able to offer sufficient reasons on remand. For that reason, the Court agrees with the

Commissioner, *see* ECF No. 19 at PageID.793, that the proper course is to remand for further proceedings.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's decision denying Auapaau's application for Social Security disability insurance benefits is REVERSED and REMANDED for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED: September 26, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 24-00176 MWJS-WRP; *Dan Auapaau v. Martin O'Malley*; ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS